Today is case number 151978, the Do Corporation v. Shastany et al. Good morning, your honors. I may it please the court, Anthony Wilson representing the Do Corporation and Daniel Silva. I'd like to reserve one minute of my time for rebuttal. Yes. Your honor, I'd first just like to start by stating that this is the case about the revocation of a liquor license for Daniel Silva, who was the sole operator of the Do Corporation, which operated the Whiplash nightclub. The appellants assert that the lower court overstepped its bounds when it granted the defendant's motion for summary judgment. And the appellants assert that there is two main reasons for this. The first, relative to the appellant's First Amendment argument that they were denied equal protection under the law, the court correctly cited to the standard articulated in Pagan v. Calderon, the two-step analysis that starts with the first determination whether there was differential treatment based on either invidious discrimination, abuse of power, or some other fundamental procedural unfairness, and whether they were treated differently than similarly situated organizations. I want to, because I think it makes more sense, I'm going to just work backwards from the second argument, which is about the differential treatment based on invidious discrimination to the argument or to the element of similarly situated. Regarding the element of differential treatment based on invidious discrimination, there is ample evidence in the record that during the hearing in which the board decided to revoke the appellant's liquor license, there was excessive or at least undue focus on the types of individuals and the types of music that the appellant was playing or performing at his establishment. There was only one witness, and it was the witness who was present at the club that evening, and he described what happened on the night of the shooting that purportedly led to this revocation. I want to recur to that. The purpose of the hearing and the powers of the board are delineated by the state's liquor licensing law, and the state determines specifically what types of violations and what type of obligations the license holder, in this case the appellant, has to uphold. And those are, in this case, the board ultimately, while its position evolved, ultimately landed on saying that there was some illegality permitted on the premise of the liquor license establishment. Again, the liquor license establishment was only the interior of the Whiplash Nightclub, and based on the testimony of the one officer who testified about the incident that they were having the hearing about, he stated that they had security, he stated that they had, on that night wanted him to have, and that when any individual engaged in any inappropriate behavior, that security and the officer would eject those individuals from the nightclub. That officer also testified that the shooting happened in a parking lot that is adjacent to the club but not under the control of the licensee, and therefore there was no grounds to, there were no factual, there were no facts that the license holder did anything contrary to his license. There was also no testimony. Mr. Wilson, it seems that all of your arguments, as we trace them through, ultimately come back to the fit of your comparators in terms of suggesting that this club was treated differently than other similarly situated clubs. And the court below found that it was basically apples and oranges, and the evidence was sufficient that at your client's apple there was, there were violent incidents, there were police calls and the like. I was going to get to your argument, let me move ahead more quickly. The purpose of discussing what happened at the hearings is to say that, again, this was the only violation hearing for this club. There is no violation under the statute that can hold a club liable for some series of incidents. Under the case law and under the CMRs, you have to find liability for each individual incident. Why am I discussing that with your honors? Because I know that Kagan v. Calderon says that you don't care about whether or not the court got it right or did the right procedure, but about whether some fundamental right was violated, is that when discussing the comparators, the lower court incorrectly ascribed certain events to the Whiplash Nightclub that were not the fault or that did not come under the rubric of the regulations of the state. Again, when discussing comparators, the statute is, or this case has been very clear in Hoody v. Allen. It stated that, excuse me, your honors, it stated that in the first instance, the ultimate decision on whether parties are similarly situated is a fact-bound inquiry, and such is normally the grist of the jury mill. However, the court can look into whether the parties that we are seeking to be comparable are engaged in the same activity vis-a-vis the government entity and without some distinguishing circumstances under comparable circumstances. In this case, the activity that you want to compare Whiplash to with the other comparators is the act of engaging in the sale of liquor under the liquor licensing statute. Could you give us an example? We have several establishments here, all of which have liquor and entertainment. Yes, sir. And the district court found that the nature and frequency of the need for there to be police intervention at your client's club was materially different than it was at the peer-to-peer comparators. Hence, you didn't have a case that like-situated entities were being treated differently. Well, again, your honor, I think that, again, that's where the district court sort of veered in the wrong direction. Tell us why the others were alike rather than unlike your clients. Well, first let me say that none of the other clubs have had, we looked at a five-year time period, any liquor license violations. The Whiplash nightclub also did not have any liquor license violations. The violation that we're talking about that ultimately led to his suspension was ultimately overturned. We were trying to compare an event that should not have been attributed to the appellant to another. It's the same as saying that an employee goes into work and is fired one day, and the reason that they say for firing is that they live in a bad neighborhood where there's a lot of shootings. The employee comes in and says, well, it's because I'm black or Hispanic or what have you. You're not going to find any other employees there that were fired for living in the wrong neighborhood because that's not a grounds for termination or for discipline. So help me out. Are you saying that the court shouldn't have considered that there was a shooting? Correct. The court is looking back on what the government entity is doing vis-a-vis my client, the appellant. But you want the court to make an inquiry under your equal protection challenge that your client is being treated differently than others. So it really doesn't make any difference if the municipality is wrong in attributing this shooting to the appellant.